UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JEANETTE RODRIGUEZ KING,       ) NO. ED CV 14-533-AS
                               )
                               )
            Plaintiff,         ) **MEMORANDUM AND OPINION**
                               )
        v.                     )
                               )
CAROLYN W. COLVIN, Acting      )
Commissioner of Social         )
Security,                      )
                               )
                               )
            Defendant.         )
                               )

**PROCEEDINGS**

On March 25, 2014, plaintiff filed a Complaint seeking review of the Commissioner's denial of her application for a period of disability, and disability insurance benefits ("DIB"), and supplemental security income ("SSI"). (Docket Entry No. 3). On August 12, 2014, defendant filed an Answer and the Administrative Record ("A.R."). (Docket Entry Nos. 12, 13). The parties have consented to proceed before a United States Magistrate Judge.

(Docket Entry Nos. 9, 10).  On October 29, 2014, the parties filed a Joint Stipulation ("Joint Stip.") setting forth their respective positions regarding plaintiff's claim.  (Docket Entry No. 15). The Court has taken this matter under submission without oral argument.  See C.D. Local R. 7-15; "Order Re Procedures in Social Security Case," filed April 1, 2014 (Docket Entry No. 7).

## BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

Plaintiff asserts disability beginning April 21, 2010[1] based on a combination of alleged impairments. (A.R. 188).   The Administrative Law Judge, Jennifer A. Simmons ("ALJ"), examined the medical record and heard testimony from plaintiff and Troy L. Scott,  a vocational expert ("VE"), on September 6, 2012.  (A.R. 27, 35-36, 70-75).  The ALJ found that plaintiff has the severe impairments  of  status  post  colostomy,  hypothyroidism,  and overweight/obesity and the non-severe conditions of carpel tunnel syndrome and depression (A.R. 30-31), and that plaintiff did not have an impairment or combination of impairments that meets or equals the severity of a listed impairment.  (A.R. 31).

The ALJ found that plaintiff retained the residual functional capacity ("RFC") to perform medium work, and can "lift/ and or carry 50 pounds occasionally and 25 pounds frequently . . . sit, stand and/or walk without any restrictions, but with appropriate breaks every two hours . . . should have bathroom privileges at

---

[1]    Although plaintiff initially claimed a disability onset date of May 31, 2008, she amended the onset date to April 21, 2010 at the administrative hearing. (A.R. 54).

the worksite . . . and would need one day off from work every four months for dilation of her stoma." (A.R. 31).

Relying on the testimony of the VE, the ALJ determined that plaintiff was able to perform her past relevant work as a "[h]ome health aide, DOT[2] No. 354.377-014, medium, semi-skilled (SVP),[3] as generally performed pursuant to the DOT, but actually performed as light work as described by the [plaintiff]." (A.R. 35). Alternatively, the ALJ found that, in addition to her past relevant work, plaintiff was able to perform other jobs existing in significant numbers in the national economy based on the VE's testimony that plaintiff's age, education, work experience and RFC rendered her able to perform the duties of hand packager (DOT No. 920.587-018), dry clean worker (DOT No. 361.687.018), and cleaner (DOT No. 381.687-018), which were all classified as medium, unskilled positions. (A.R. 35-36). The ALJ deemed plaintiff's subjective complaints of disabling symptomatology not credible. (A.R. 32-34).

On October 31, 2012, the ALJ issued a decision finding that plaintiff was not disabled at any time from the alleged disability onset date of April 21, 2010 through the date of the decision and denied plaintiff's application for DIB and SSI. (A.R. 27-37).
///
///

---

[2]     Dictionary of Occupational Titles.

[3]     Specific Vocational Preparation, as defined in Appendix C of the  Dictionary of Occupational Titles.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S CONTENTION**

Plaintiff contends that the ALJ erred in her assessment of plaintiff's credibility.  (Joint Stip. 5).

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine if:  (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. 42 U.S.C. § 405(g); see Carmickle v. Comm'r, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007).  "Substantial evidence is more than a scintilla, but less than a preponderance." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997).  It is relevant evidence  "which a reasonable person might accept as adequate to support a conclusion." Hoopai, 499 F.3d at 1074; Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996)).  To determine whether substantial evidence supports a finding, "a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 1997) (citation omitted); see Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (inferences "reasonably drawn from the record" can constitute substantial evidence).

This Court "may not affirm [the Commissioner's] decision simply by isolating a specific quantum of supporting evidence, but

4

must also consider evidence that detracts from [the Commissioner's] conclusion." Ray v. Bowen, 813 F.2d 914, 915 (9th Cir. 1987) (citation and internal quotation marks omitted); Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (same). However, the Court cannot disturb findings supported by substantial evidence, even though there may exist other evidence supporting Plaintiff's claim. See Torske v. Richardson, 484 F.2d 59, 60 (9th Cir. 1973). "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, [a] court may not substitute its judgment for that of the [Commissioner]." Reddick, 157 F.3d 715, 720-21 (9th Cir. 1998) (citation omitted).

## APPLICABLE LAW

"The Social Security Act defines disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (quoting 42 U.S.C. § 423 (d)(1)(A)). The ALJ follows a five-step, sequential analysis to determine whether a claimant has established disability. 20 C.F.R. § 404.1520.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful employment activity. Id. § 404.1520(a)(4)(i). "Substantial gainful activity" is defined as "work that . . . [i]nvolves doing significant and productive

5

physical or mental duties[] and . . . [i]s done (or intended) for pay or profit." Id. §§ 404.1510, 404.1572. If the ALJ determines that the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two which requires the ALJ to determine whether the claimant has a medically severe impairment or combination of impairments that significantly limits her ability to do basic work activities. See id. § 404.1520(a)(4)(ii); see also Webb, 433 F.3d at 686. The "ability to do basic work activities" is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); Webb, 433 F.3d at 686. An impairment is not severe if it is merely "a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." Webb, 433 F.3d at 686.

If the ALJ concludes that a claimant lacks a medically severe impairment, the ALJ must find the claimant not disabled. Id.; 20 C.F.R. § 1520(a)(ii); Ukolov v. Barnhart, 420 F.3d 1002, 1003 (9th Cir. 2005) (ALJ need not consider subsequent steps if there is a finding of "disabled" or "not disabled" at any step).

However, if the ALJ finds that a claimant's impairment is severe, then step three requires the ALJ to evaluate whether the claimant's impairment satisfies certain statutory requirements entitling her to a disability finding. Webb, 433 F.3d at 686. If the impairment does not satisfy the statutory requirements entitling the claimant to a disability finding, the ALJ must determine the claimant's RFC, that is, the ability to do physical and mental work activities on a sustained basis despite

6

limitations from all her impairments.  20 C.F.R. § 416.920(e).

Once the RFC is determined, the ALJ proceeds to step four to assess whether the claimant is able to do any work that she has done in the past, defined as work performed in the last fifteen years prior to the disability onset date.  If the ALJ finds that the claimant is not able to do the type of work that she has done in the past or does not have any past relevant work, the ALJ proceeds to step five to determine whether – taking into account the claimant's age, education, work experience and RFC – there is any other work that the claimant can do and if so, whether there are a significant number of such jobs in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1520(a)(4)(iii)-(v).  The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Tackett, 180 F.3d at 1098.

## DISCUSSION

After consideration of the record as a whole, the Court finds that the Commissioner's findings are supported by substantial evidence and are free from material[4] legal error.

///

///

---

[4]   The harmless error rule applies to the review of administrative decisions regarding disability.  See McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (stating that an ALJ's decision will not be reversed for errors that are harmless).

**A.    The ALJ Did Not Err in Evaluating Plaintiff's Credibility**

Where, as here, the ALJ finds that a claimant suffers from a medically determinable impairment that could reasonably be expected to produce her alleged symptoms, the ALJ must evaluate "the intensity, persistence, and functionally limiting effects of the individual's symptoms . . . to determine the extent to which the symptoms affect the individual's ability to do basic work activities.  This requires the [ALJ] to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effect."  Soc. Sec. Ruling ("SSR") 96-7p.

An ALJ's assessment of a claimant's credibility is entitled to "great weight."  Anderson v. Sullivan, 914 F.2d 1121, 1124 (9th Cir. 1990); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985).  The ALJ may not discount the claimant's testimony regarding the severity of the symptoms without making "specific, cogent" findings.  Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995); see also Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010) (reaffirming same); but see Smolen, 80 F.3d at 1283-84 (indicating that ALJ must provide "specific, clear and convincing reasons to reject a claimant's testimony where there is no evidence of malingering); see Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990).[5]  Generalized, conclusory findings do not suffice.  See

_____

[5]    In the absence of evidence of "malingering," most recent Ninth Circuit cases have applied the "clear and convincing" standard.  See, e.g., Chaudhry v. Astrue, 688 F.3d 661, 670, 672 n.10 (9th Cir. 2012); Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012); Taylor v. Comm'r, 659 F.3d 1228, 1234 (9th Cir. 2011); (continued...)

Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (the ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the [ALJ] rejected [the] claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony") (citation and internal quotation marks omitted); Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001) (the ALJ must "specifically identify the testimony [the ALJ] finds not to be credible and must explain what evidence undermines the testimony"); Smolen, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."); see also SSR 96-7p.

Plaintiff asserts that the ALJ failed to articulate "any clear and convincing reasons" to find Plaintiff not credible. (Joint Stip. 12).

As described by the ALJ, Plaintiff testified at the hearing to the following:

The claimant also claimed she was disabled as a result of an alleged gastrointestinal (GI) impairment, requiring an internal GI pouch placement, and to a

---

⁵(...continued)
Valentine v. Comm'r, 574 F.3d 685, 693 (9th Cir. 2009); Ballard v. Apfel, 2000 WL 1899797, at *2 n.1 (C.D. Cal. Dec. 19, 2000) (collecting cases). In the present case, the ALJ's findings pass muster under either the "specific, cogent" standard or the "clear and convincing" standard, so any distinction between the two standards (if any) is academic.

lesser extent a cyst on her neck . . . The claimant alleged her activities of daily living were impacted such that she was limited to lying around the house because of chronic pain associated with her GI pouch, for which she claimed she took pain medication daily. She further indicated the GI pouch required regular intubation to avoid leaks and escape of odors. The claimant additionally indicated she received treatment, which involved monitoring and dilation of her GI pouch every six months, pain medication, and hospitalization for a bowel obstruction. . . . the claimant also testified she provided in-home health services to her adult son, who suffers from the same alleged impairment. Those services included cooking, doing laundry, and monitoring medications.

(A.R. 32-33).

After considering the record and the testimony presented at the hearing, the ALJ found plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms "not credible to the extent they are inconsistent with" the ALJ's RFC assessment. (A.R. 32).

The ALJ gave the following reasons for discounting Plaintiff's credibility: (1) plaintiff's statements regarding the severity of the limiting effects of her alleged impairment were exaggerated; (2) plaintiff's activities of daily living, including the services she provided for her adult son, were inconsistent

10

with her claimed functional limitations; (3) plaintiff's treatment since the amended onset date of April 21, 2010 has been conservative in nature; and (4) the objective medical evidence did not support the extent of plaintiff's alleged functional limitations. (A.R. 32-33).

As set forth below, the Court finds that the ALJ stated legally sufficient reasons for her adverse credibility finding.

### 1.   <u>Inconsistencies in Testimony</u>

The ALJ may rely on "ordinary techniques of credibility evaluation" in considering Plaintiff's credibility. <u>Smolen</u>, 80 F.3d at 1284. As a result, "the adjudicator may discredit the claimant's allegations based on inconsistencies in the testimony or on relevant character evidence." <u>Bunnell</u>, 947 F.2d at 346; <u>Verduzco v. Apfel</u>, 188 F.3d 1087, 1090 (9th Cir. 1999) (inconsistencies in claimant's various statements cited as a clear and convincing reason for rejecting the claimant's testimony). The ALJ's review of the record revealed that plaintiff's statements regarding the severity of the limiting effects of her impairment were not fully credible, given "evidence of exaggeration." (A.R. 32). Specifically, the ALJ noted that, "[d]espite alleging her GI pouch required dilation every six months . . . she later indicated her GI pouch had not been dilated since 2008 because of a lack of health insurance, a stark contrast to her prior statement . . . she obtained insurance as far back as December of 2011, yet, she still had not undergone dilation of her GI pouch as of the date of the hearing." (A.R. 32).

Q:   And so you haven't been dilated in . . . four years?

A.   Four years, yes.

Q:   So what -- how does this affect what you do every day?

A:    It's just painful . . .

(A.R. 58). Thus, the ALJ determined that plaintiff's credibility regarding her chronic pain from the GI pouch was undermined by testimony that even after she had obtained health insurance in December 2011 (nine months prior to the hearing), she had still not undergone the required procedure to alleviate the pain. (A.R. 32, 56-58).

The ALJ also questioned the veracity of plaintiff's allegations of chronic pain for which she was taking daily pain medication in light of her admission that when she did not have insurance, she was using ibuprofen for the pain.  (A.R. 59). "Additionally, although [t]he claimant indicated she suffered from chronic pain related to her GI pouch and took daily medication, she also reported she was not on any pain medication while she did not have health insurance." (A.R. 33).

In addition, the ALJ found no support in the medical record for  plaintiff's testimony regarding her hospitalization in September 2011 for bowel obstruction. (A.R. 33). Plaintiff testified that she was hospitalized for 4-5 days in September or October 2011 for valve obstruction, but the records from that hospitalization reveal that plaintiff was admitted and discharged on the same day - September 30, 2011 - and there was no evidence

of any obstruction.  Id.; see A.R. 51, 59, 344-63. "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008); See also Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").  The ALJ properly relied on the lack of objective medical evidence supporting plaintiff's testimony in making an adverse credibility determination.

Thus, the Court finds that the inconsistencies in plaintiff's statements and testimony was a clear and convincing reason for the ALJ to discount plaintiff's credibility.

### 2.    Activities of Daily Living

The ALJ found plaintiff's subjective complaints to be inconsistent with the in-home health services she provided to her adult son as a home health aide.  (A.R. 32-33).  These activities included cooking, doing laundry and monitoring medications.  Id. Plaintiff's claims regarding disability were undermined by her admissions regarding the services she provided for her adult son and the ALJ was entitled to find that plaintiff's activities of daily living suggested that her "alleged impairment was not as severe as she had alleged." (A.R. 33).  When asked whether she required in home services for herself, plaintiff testified that she had told her treating doctor that she did not need these

services but now felt that she should have such services because she needed help going to the store. ("My Dr. Velasquez had asked me if I wanted to, and at that time I didn't feel like I needed it . . . But I feel like I should have because — to go to the store, my oldest goes to work, I'm going to, you know, need help going to the store.") (A.R. 61).

Plaintiff contends that the ALJ failed to adequately explain how her "ability to help her son, on her own schedule and at her own pace, for a portion of the time" translates into the ability to perform work on a full-time, competitive basis. (Joint Stip. 12). However, plaintiff cites no authority that requires the ALJ to do so. Here, the inconsistencies between plaintiff's claimed inability to work due to pain associated with her need to intubate her GI pouch and use the restroom every half hour or 45 minutes, and the symptoms of her carpel tunnel syndrome, including the inability to lift over five to ten pounds and difficulty gripping or grasping (A.R. 61-66), and plaintiff's admitted daily activities of cleaning house, shopping for groceries, taking care of her four-year old granddaughter and providing in home services for her adult son (A.R. 59-60), amply support the ALJ's adverse credibility determination. Moreover, the ALJ credited plaintiff's testimony regarding her need to regularly use and have access to the restroom and her need for regular dilation of her GI pouch by factoring these limitations into the RFC. Thus, the RFC included the limitation that plaintiff have breaks every two hours, bathroom privileges at the worksite and have one day off from work every four months for dilation of her stoma. (A.R. 31).

14

An ALJ may properly rely on inconsistencies between a claimant's testimony and her conduct and daily activities. See, e.g., Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005) (daily activities can constitute "clear and convincing reasons" for discounting a claimant's testimony); Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (inconsistency between the claimant's testimony and the claimant's conduct supported the rejection of the claimant's credibility); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (claimant's testimony regarding daily domestic activities undermined the credibility of her pain-related testimony); Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999) (inconsistencies between claimant's testimony and actions cited as a clear and convincing reason for rejecting the claimant's testimony); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (ALJ may properly rely on weak objective support, lack of treatment, daily activities inconsistent with total disability, and helpful medication); and Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (("[I]f, despite [a claimant's complaints], a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's [complaints] do[] not prevent the claimant from working.").

Here, the ALJ's finding that plaintiff's allegations regarding the disabling effect of her symptoms were inconsistent with the daily activities she was able to engage in was a valid reason for discounting plaintiff's credibility.

1
2

### 3.    <u>Plaintiff's Conservative Treatment</u>

3
4
5
6
7
8
9
10
11
12
13

"[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding the severity of an impairment." <u>Parra v. Astrue</u>, 481 F.3d 742, 751 (9th Cir. 2007)(holding that Plaintiff's use of over-the-counter pain medications to treat pain was inconsistent with Plaintiff's claims that pain was disabling). The ALJ found Plaintiff's "treatment since the [] amended onset date has been conservative in nature" and determined that the "lack of more and/or aggressive treatment suggests her symptoms and limitations were not as severe as she alleged." (A.R. 33). A review of the record supports this finding.

14
15
16
17
18
19
20
21
22
23
24
25
26
27

Plaintiff testified that during the two-year period following the amended disability onset date of April 21, 2010, she had only sought treatment from Dr. Rivera at the Loma Linda University Medical Center and Dr. Velasquez at Family Practice and Associates in Hesperia. (A.R. 49). The available records reflect routine follow-up appointments with no evidence of acute exacerbation of her symptoms. (A.R. 232-234, 366-69). Progress notes from plaintiff's visits to Family Practice Associates in March, April and September 11, 2012 recommend that plaintiff continue taking pain medication and be provided with necessary supplies for her stoma. (A.R. 366-69). Although the September 11, 2012 visit documents a right lobe thyromegaly, the recommended treatment for this condition was lab testing and a scheduled biopsy. (A.R. 337, 366). A September 30, 2011 visit to the emergency room at Loma

28

Linda University Medical Center revealed normal findings and plaintiff was discharged after being provided with medication for pain and nausea.  (A.R. 342-363).

Accordingly, the ALJ properly discounted Plaintiff's testimony regarding the limiting effects of her condition based on her conservative treatment. See Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (ALJ may properly rely on the fact that only conservative treatment has been prescribed).  Thus, this was a clear and convincing reason to discount Plaintiff's credibility.

### 4.  Objective Medical Evidence

Although a claimant's credibility "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor . . ." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).  Lack of supporting objective medical evidence is a key consideration for the ALJ in evaluating credibility.  See 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4) (in determining disability, an ALJ must evaluate a claimant's statements about the intensity, persistence and limiting effects of her symptoms "in relation to the objective medical evidence and other evidence").

Here, the ALJ found that the objective medical evidence did not fully support Plaintiff's complaints of total disability. (A.R. 33-34).  The Court's review of the record supports this finding.

On November 4, 2010, the internal medicine consultative examiner, Dr. Bryan H. To, who conducted a physical and neurological examination, found that plaintiff was capable of medium exertional work with environmental and postural limitations despite her complaints of pain with range of motion. (A.R. 34, 297-99). Dr. To concluded that plaintiff was limited to pushing, pulling, lifting and carrying 50 pounds occasionally and 25 pounds frequently, could stand and walk six hours in an eight-hour day, could frequently use her hands for fine and gross manipulative movements but recommended that she be restricted from working with heavy and moving machineries. (A.R. 298-99). With respect to plaintiff's GI pouch, To reported that, "there is evidence of right lower quadrant with the opening. Dressing was clean. Abdomen was benign otherwise." (A.R. 298). Dr. To's examination also revealed that plaintiff's grip strength was within normal limits, her neck and back were unremarkable, and the symptoms of plaintiff's carpel tunnel syndrome had improved with her use of braces. (A.R. 298). Dr. To also noted that plaintiff regularly catheterized and self intubated her GI pouch and followed up with her physician every six months. (A.R. 298).

The state agency medical consultants, Dr. George Lockie and Dr. A. Lizarraras, reviewed the medical evidence and agreed with Dr. To's assessment that plaintiff was capable of medium exertional work. (A.R. 300-307, 322-23).

The ALJ noted that there was "no reliable medical source statement from any physician endorsing the extent of [plaintiff's]

18

alleged functional limitations." (A.R. 33). A review of the record confirms this finding. (A.R. 255-369). Diagnostic test results since the amended onset date of April 21, 2010 revealed only normal or mild results and do not support a more restrictive functional limitation that the RFC assessment. (A.R. 33). The ALJ found that although plaintiff claimed that she had been hospitalized in September 2011 for inability to intubate her GI pouch, medical records from an  emergency room visit on September 30, 2011 revealed largely normal findings and no evidence of any bowel obstruction or inflammation. (A.R. 342-363).  Plaintiff was provided with medication for pain and nausea and  discharged on the same day. Id.  Accordingly, the ALJ concluded that contrary to plaintiff's testimony, her condition had not worsened. (A.R. 33, 64).

Moreover, as discussed above, the objective medical evidence was not the only legally sufficient reason for discounting plaintiff's credibility. See Robbins v. Social Security Administration, 466 F.3d 880, 883 (9th Cir. 2006)(ALJ may cite the medical record in concert with other factors in assessing a claimant's credibility).

**CONCLUSION**

The legally valid reasons given by the ALJ for discounting plaintiff's credibility sufficiently allow the Court to conclude that the ALJ's credibility finding was based on permissible grounds.  The Court therefore defers to the ALJ's credibility

determination.  See <u>Lasich v. Astrue</u>, 252 Fed. App'x 823, 825 (9th Cir. 2007) (court will defer to ALJ's credibility determination when the proper process is used and proper reasons for the decision are provided); <u>accord</u> <u>Flaten v. Sec'y of Health and Human Serv.</u>, 44 F.3d 1453, 1464 (9th Cir. 1995).  Where the ALJ has made specific findings justifying a decision to disbelieve plaintiff's symptom allegations and those findings are supported by substantial evidence in the record, "we may not engage in second guessing."  <u>Thomas</u>, 278 F.3d at 958-59.

**ORDER**

For all of the foregoing reasons, the decision of the Administrative Law Judge is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:  November 7, 2014.


                              /s/
                              ALKA SAGAR
                              UNITED STATES MAGISTRATE JUDGE